UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

RYAN M. CLANCY

                Plaintiff,

                                      Case No.:  21-CV-881

v.

CITY OF MILWAUKEE,
MILWAUKEE COUNTY,
JOHN DOE MILWAUKEE PLICE OFFICERS,
JOHN DOE MILWAUKEE COUNTY SHERIFF'S DEPUTIES,

and,

MAYOR TOM BARRETT
City Hall,
200 E. Wells Street, Room 201,
Milwaukee, WI 53202

CHRISTOPHER A. MOEWS
749 W. State Street,
Milwaukee, WI 53233

DAVID BETTIN
749 W. State Street,
Milwaukee, WI 53233

MATTHEW ROSEN
749 W. State Street,
Milwaukee, WI 53233

                        Defendants.

## SECOND AMENDED COMPLAINT

    **NOW COMES** the above-named plaintiff, Ryan M. Clancy, by his attorneys, Drew

DeVinney of Martin Law Office, S.C. & E. Edgar Lin of Ahmad & Associates, LLC., and as and

for his second amended claims for relief against the above-named defendants, alleges and shows to the Court as follows:

## INTRODUCTION

1.      The plaintiff files this second amended complaint to name as defendants the individual officers of the Milwaukee Police Department that have been identified pursuant to ongoing discovery in this matter. The allegations in this second amended complaint are expressly intended to relate back to the previous amended complaint filed in this matter.

## NATURE OF THE CASE

2.      This is a civil action, pursuant to the laws of the State of Wisconsin and 42 U.S.C. §§ 1983 and 1988, for redress of the violation, under color of law, of Ryan M. Clancy's rights secured by the Fourteenth and Fourth Amendments to the United States Constitution; that the allegations herein arise from acts committed, and injuries and damages incurred, in the State of Wisconsin, County of Milwaukee; that all parties to this action are residents of the State of Wisconsin, County of Milwaukee.

## PARTIES

3.      The plaintiff, Ryan M. Clancy, is an adult citizen and resident of the State of Wisconsin, residing at 2543 S. Howell Ave., Milwaukee WI 53217. At all material times, Ryan Clancy was an elected Milwaukee County Supervisor for the 4th District. Supervisor Clancy brings this lawsuit in his individual capacity as a citizen of Milwaukee County and the City of Milwaukee.

4.      The defendant, City of Milwaukee, is a municipal corporation, organized and existing under the laws of the State of Wisconsin, whose principal offices are located at 200 East Wells Street, City and County of Milwaukee, State of Wisconsin, 53202. The Milwaukee Police

2

Department ("MPD") is an agency of the City of Milwaukee. The City of Milwaukee is responsible for declaring and managing emergencies under Wis. Stat. §§ 323.14 and 323.15. The City of Milwaukee is responsible for creating and implementing MPD's policies and practices. The City of Milwaukee is responsible for the hiring, training, supervision, and discipline of Milwaukee Police Officers. The City of Milwaukee has a legal obligation under Wis. Stat. § 895.46 to indemnify each of the John Doe Police Officers involved in this matter and to satisfy any judgment entered against them if it is determined that the unidentified defendant police officers were acting within the scope of their employment at all times material hereto.

5.      Milwaukee County is a municipal corporation organized under the laws of the State of Wisconsin with offices at 901 North 9th Street, Room 105, Milwaukee, WI 53233. Milwaukee County Sheriff's Office ("MCSO") is an agency of Milwaukee County. Milwaukee County is responsible for creating and implementing MCSO's policies and practices. Milwaukee County is responsible for the hiring, training, supervision, and discipline of sheriff's deputies employed with MCSO, Milwaukee County has a legal obligation under Wis. Stat. sec 895.46 to indemnify each of the John Doe Sheriff's Deputies involved in this matter and to satisfy any judgment against them if it is determined that the unidentified sheriff's deputies were acting within the scope of their employment at all times material hereto.

6.      John Doe Police Officers is a fictitious name for unidentified police officers involved in the unconstitutional arrest of the plaintiff on May 31, 2020. Each John Doe Police Officer was acting within the scope of their employment with the City of Milwaukee and under color of state law.

7.      John Doe Sheriff's Deputy is a fictitious name for an unidentified law enforcement officer employed by the Milwaukee County Sheriff's Office that, upon information

3

and belief, was directly involved in, and/or failed to intervene to stop the unconstitutional arrest of the plaintiff on May 31, 2020. John Doe Sheriff's Deputy was acting within the scope of their employment with Milwaukee County and under color of state law. To date, Milwaukee County has not been able to identify John Doe Sheriff's Deputy. John Doe Sheriff's Deputy's face was captured on Supervisor Clancy's cellphone during his arrest and is pictured below:



8.      Tom Barrett is the Mayor of Milwaukee. He signed and issued an emergency proclamation instituting a curfew on May 30, 2020. He is sued in his official capacity.

9.      Christopher A. Moews was, at all times material hereto, a police officer employed by the Milwaukee Police Department. He is being sued in his official and individual capacity.

10.      David Bettin was, at all times material hereto, a police officer employed by the Milwaukee Police Department. He is being sued in his official and individual capacity.

11.      Matthew Rosen was, at all times material hereto, a police officer employed by the Milwaukee Police Department. He is being sued in his official and individual capacity.

## GENERAL ALLEGATIONS

12.      In May 2020, citizens in Milwaukee took to the street to protest for black lives and against police brutality after George Floyd was murdered in Minneapolis, Minnesota.

4

13. Upon information and belief, on or about May 30, 2020, unknown officers of the Milwaukee Police Department requested City of Mayor Tom Barrett to declare an emergency curfew.

14. The purpose of requesting a curfew was to chill free speech and intimidate citizens protesting in the wake of George Floyd's murder. The curfew order provided a pretext to arrest lawfully assembled citizens.

15. Relying on information provided by the defendants, the City of Milwaukee, through Mayor Barrett enacted a State Emergency Curfew by proclamation on May 30, 2020.

16. The May 30, 2020 proclamation is produced on the following page:

Case 2:21-cv-00881-BHL   Filed 12/01/21   Page 5 of 23   Document 29



**Tom Barrett**
Mayor, City of Milwaukee

### PROCLAMATION BY THE MAYOR

**Whereas,** on May 29th, 2020, multiple protests and demonstrations in the City of Milwaukee occurred regarding recent police officer involved deaths in Minneapolis and Milwaukee;

**Whereas,** the peaceful assembly of persons exercising their First Amendment right to protests ended at approximately 10:00 p.m. After the conclusion of the peaceful protests, other individuals began to act in a manner that disrupted the safety and good order of the City of Milwaukee;

**Whereas,** after approximately 10:00 p.m. and the conclusion of the protests, a police squad was damaged by these unlawful and violent actions of these separate individuals and a number of people began driving motor vehicles on sidewalks and into oncoming traffic lanes, and subsequently coordinated vehicular travel to various locations throughout Milwaukee to break windows and loot various retail establishments;

**Whereas,** just after midnight until approximately 3:00 a.m. on May 30th, 2020, these individuals began to throw items at law enforcement officers, causing injuries thereto, and continued travelling throughout the City of Milwaukee engaged in the following activities: multiple instances of shots fired, multiple instances of mass theft of private property, defacement and vandalism of private property, vandalism of public property, and the shooting of an on duty Milwaukee Police Department officer, as well as other acts that endangered the health, safety, and welfare of the citizens of Milwaukee.

**Whereas,** it is expedient for the health, safety, welfare, and good order of the City of Milwaukee that a curfew be imposed limiting pedestrian and vehicular travel in order to stem the coordinated looting and property damage to private and public property in the City of Milwaukee; now, therefore,

I, Tom Barrett, Mayor of the City of Milwaukee, hereby declare that:

Pursuant to the authority granted me by Wisconsin Statute § 323.14(4)(b), and Milwaukee Code of Ordinance § 6-07-3 I hereby proclaim and declare a state of emergency in the City of Milwaukee and order an emergency curfew in the entire City of Milwaukee for all persons from 9:00 p.m. May 30th, 2020, until 07:00 a.m. on May 31st , 2020. All persons shall cease vehicular and pedestrian travel on the public way, streets, sidewalks and highways and return to their homes, places of work or other convenient place. Government, social services, and credentialed press acting in their official capacity are exempt from this order.

Dated at Milwaukee, Wisconsin, this 30th day of May 2020.

*Tom Barrett*

**Tom Barrett**
**Mayor**

Office of the Mayor · City Hall · 200 East Wells Street · Milwaukee, Wisconsin 53202
(414) 286-2200 · fax (414) 286-3191 · mayor@milwaukee.gov

6

17.     Pursuant to the express language of the May 30, 2020 proclamation, the plaintiff, Ryan Clancy, was exempt from the curfew as an elected member of government.

18.     The defendants knew or reasonably should have known that the plaintiff was an elected member of government at the time of the incidents alleged herein.

19.     The May 30, 2020 proclamation violated due process and was invalid under local ordinance and state law. In enacting the proclamation, Mayor Barrett cited to the emergency powers under Milwaukee Ordinance 6-07-03 and Wis. Stat. § 323.14. The authority to order a curfew under the Emergency Powers ordinance and statute is conferred to the common council, unless "because of the emergency conditions, the common council is unable to meet with promptness." The common council did not declare an emergency on or about May 30, 2020. The nightly protests and demonstrations cited by Mayor Barrett as the "emergency conditions" falsely justifying the curfew did not prevent the common council from promptly meeting prior to the May 30, 2020 proclamation. At the time of the proclamation, the common council regularly met and had the ability to meet via teleconference and could have done so in order to declare an emergency. At no point did the common council ratify, repeal, or amend the May 30, 2020 proclamation.

20.     The defendants knew or reasonably should have known that the curfew proclamation was invalid and/or unconstitutional at the time of the incidents alleged herein.

21.      Supervisor Clancy was observing citizen protestors as they marched through the City of Milwaukee, Village of Shorewood, Village of Whitefish Bay and City of Glendale. The protestors were peaceful throughout Supervisor Clancy's attendance.

22.     Supervisor Clancy attended the marches earlier in the evening on May 30,2020 as an observer for the American Civil Liberties Union ("ACLU").

7

23.     When the larger march ended, Supervisor Clancy's duties as an ACLU observer ended. Supervisor Clancy covered the ACLU logo on his sweatshirt with tape and put on a pin insignia showing that he is an elected member of government with Milwaukee County.

24.     Supervisor Clancy followed a group of citizen protestors that had split from the larger group to the intersection of E. Kenwood Blvd and N. Oakland Ave. in the Village of Shorewood.

25.     At all times, Supervisor Clancy was acting in his official capacity as a Milwaukee County Supervisor in order to observe law enforcement's, including the Milwaukee County Sheriff's Office's, interactions with citizens in Milwaukee County.

26.     Prior to and at time of his arrest, Supervisor Clancy was filming the interactions between protestors and various law enforcement officers with his cellphone.

27.     Upon information and belief, as the march had winded down and split into multiple smaller groups, law enforcement officers with Milwaukee County and the City of Milwaukee, among other departments, including Brown Deer, Shorewood, and North Shore, converged on the protestors at the intersection of Oakland Avenue and Kenwood Blvd in the Village of Shorewood.

28.     Milwaukee Police Department and Milwaukee County Sheriff's Office coordinated to push the protestors from the Village of Shorewood, south, into the City of Milwaukee. Milwaukee County Sheriff's Office deputies formed a lien north of the protestors and began to push the group south. The following screenshot from Supervisor Clancy's cellphone video shows Milwaukee County Sheriff's Officers lined up north of the intersection of Oakland Avenue and Kenwood Blvd in the Village of Shorewood:

8



29.     As the Milwaukee County Sheriff's Office deputies pushed the crowd south, two deputies, now identified as Deputy Daniel Humphreys and Deputy Ben Leuzinger, arrested an unknown citizen who refused to be moved into the City of Milwaukee. This protestor was never identified by the Milwaukee County Sheriff's Office.

30.     Once the group had been pushed into the City of Milwaukee, an unknown member of the Milwaukee Police Department announced over the radio that the Sheriff's Office had pushed the citizens into the City of Milwaukee and were keeping them there. An unknown person at command post for the Milwaukee County Sheriff's Office announced over the radio that the protestors were now in violation of the curfew and "fair game."

9

31.     At this time, Supervisor Clancy attempted to leave into Shorewood but was told by an unknown officer that he could not do so. So, Supervisor Clancy, knowing himself to be exempt from the curfew, continued to observe and film the interactions between the protestors and law enforcement in his official capacity.

32.     As Supervisor Clancy filmed, an unidentified law enforcement officer charged at him and tackled him to the concrete sidewalk. After Supervisor Clancy was tackled, Defendant David Bettin placed Supervisor Clancy under arrest. Defendant Bettin does not know the identity of the person who tackled Supervisor Clancy and never asked why this individual tackled Supervisor Clancy. Bettin did not observe Supervisor Clancy commit any violation prior to his arrest. At the time he arrested Supervisor Clancy, Bettin did not have any reasonable suspicion or probable cause to believe that Supervisor Clancy had committed any crime or violation.

33.     No officer with the Milwaukee Police Department, including the individually named defendants, ever identified the individual who tackled Supervisor Clancy or spoke with this individual to determine the reason he tackled Supervisor Clancy.

34.     After the incident, Bettin claimed that Supervisor Clancy was attempting to interfere with the arrest of another citizen who was standing in the vicinity of Supervisor Clancy. This is an after-the-fact false statement made to justify the arrest. Bettin further claimed that Supervisor Clancy was attempting to compromise the police line. This is also an after-the-fact false statement made to justify the arrest.

35.     Most Milwaukee Police Department officers were not wearing a Body-Worn Camera ("BWC"), contrary to Milwaukee Police Department policy. Lieutenant Mark Wroblewski, who was in charge of the Milwaukee Police Department Major Incident Response

10

Team ("MIRT") told the MIRT squad to violate this policy on the night of Supervisor Clancy's arrest.

36.     Bettin secured Supervisor Clancy's hands in a zip-tie handcuffs and led him to a Milwaukee Police Department van where he was held. Supervisor Clancy told Bettin multiple times that he was an elected member of government and exempt from the curfew. Bettin reasonably believed Supervisor Clancy to be a County Supervisor at all times.

37.     Defendant Moews was a supervising officer at the scene of Supervisor Clancy's arrest.

38.     Supervisor Clancy told Defendant Moews numerous times that he was an elected county supervisor and not subject to the curfew. Supervisor Clancy asked Defendant Moews to look at his business cards, his driver's license, the insignia pin on his sweatshirt, and to look his information up online to confirm his identity. Defendant Moews reasonably believed Supervisor Clancy to be a County Supervisor at all times.

39.     Defendant Moews did not determine or ask why Supervisor Clancy was initially arrested by Bettin. Despite lacking any reasonable suspicion or probable cause to believe that Supervisor Clancy had committed any offense, Defendant Moews ordered that Supervisor Clancy be arrested and held in custody.

40.     Defendant Moews' actions and orders to arrest and confine Supervisor Clancy were motivated by malice and indifference to Supervisor Clancy's rights.

41.     Defendant Matthew Rosen was wearing a BWC. Defendant Rosen observed all of Defendant Moews interactions with Supervisor Clancy. Defendant Rosen sat in the front of the Milwaukee Police Department van, while Supervisor Clancy was in custody in the back of the

van. Defendant Rosen reasonably believed Supervisor Clancy to be a County Supervisor at all times.

42.     Before the van with Supervisor Clancy left the scene, Defendant Moews approached Defendant Rosen and asked him to speak with him. Defendant Rosen asked Moews what they were going to do with the "elected official," referring to Supervisor Clancy. Moews asked Rosen to step away from the van so that no one else could hear them speak. As they were walking away from the van, Rosen noticed that his BWC was actively recording. Rosen then stated: "let me turn this off" and proceeded to turn off the BWC. Upon information and belief, Moews and Rosen discussed how they would justify arresting Supervisor Clancy, with the knowledge that they did not have any reasonable suspicion or probable cause to believe he had violated any laws or act in an unruly manner and that, as an elected official, he was exempted from the curfew.

43.     Defendant Rosen and an unidentified Milwaukee Police Department officer continued the arrest of Supervisor Clancy by driving him from the scene, still secured in the back of the van.

44.     Supervisor Clancy was eventually transported to a Milwaukee Police Department bus where he and other arrestees were driven around from location to location. Eventually Supervisor Clancy was detained at a Milwaukee police station until sometime around 3:00 am.

45.     While in custody by the Milwaukee Police Department, Supervisor Clancy was exposed to police officers and citizens that were not wearing masks.

46.     At the time of the subject incident, the Centers for Disease Control and Prevention had recommended that adults wear masks at all times and that anyone possibly exposed to Covid-19 quarantine for 14-days.

47.     Due to the CDC guidance in effect at the time and the number of unmasked individuals in close proximity to Supervisor Clancy, he requested PPE (Personal Protective Equipment) but was denied.

48.     Following these incidents, Supervisor Clancy, pursuant to CDC guidance, was forced to quarantine from his family for fourteen days.

49.     At all times, Supervisor Clancy clearly identified and held himself out as an elected member of government. Each named defendant was aware, at all times, that Supervisor Clancy was an elected member of government.

50.     At the time Supervisor Clancy was tackled and arrested, multiple John Doe Police Officers and John Doe Sheriff's Deputies were in the immediate vicinity, within feet, of Supervisor Clancy. Upon information and belief, John Doe Police Officers and John Doe Sheriff's Deputies were aware, or reasonably should have been aware that Supervisor Clancy is an elected County Executive.

51.     At all times, Supervisor Clancy acted peacefully and did not resist any commands of any law enforcement officer.

52.     At no point was there any articulable reason or probable cause to stop or arrest Supervisor Clancy.

53.     The John Doe Police Officers and John Doe Sheriff's Deputies in the immediate vicinity of Supervisor Clancy's arrest lacked probable cause or reasonable suspicion to believe that Supervisor Clancy had violated any ordinance or law, including violation of Mayor Barrett's curfew proclamation for which he was exempted. John Doe Police Officers and John Doe Sheriff's Deputies had ample opportunity, but failed, to intervene in the arrest of Supervisor Clancy, despite being aware of the violation of Supervisor Clancy's constitutional rights.

13

54.     Milwaukee County was asked to identify any Milwaukee County employees that participated in the arrest of Supervisor Clancy on May 31, 2020.

55.     Just after Mr. Clancy was tackled, his recording was turned off by an unknown officer. The last image from his cellphone video shows an individual in a Milwaukee County Sheriff's Office helmet assisting in Supervisor Clancy's arrest. Milwaukee County was asked to identify this individual but has been to do so.

56.     Upon information and belief, this individual is one of following employees of Milwaukee County that were present at the scene of Supervisor Clancy's arrest:

Captain Colin Briggs
Sergeant Mark Pawlak
Detective Todd Rosenstein
Deputy Jamie Arnold
Deputy Thomas Donzelli
Deputy Mark Dukat
Deputy Lacey Garey
Deputy Steven Geason
Deputy John Guillot
Deputy Roberto Hernandez
Deputy Dillon Kelley
Deputy Nicholas Kellner
Deputy Antwuan Meeks
Deputy Jennifer Moldenhauer
Deputy Bryan Morgan
Deputy Christopher O'Guin
Deputy Ryan Richards
Deputy Rotonia Sanders
Deputy Brandon Scales
Deputy Nathan Spittlemeister
Deputy Andrew Sullivan
Deputy Matthew Vandertie
Deputy Kongpheng Vang
Deputy Brendt VanWagoner
Corrections Officer Brian Anderson
Corrections Officer Shaughn Flemmer
Platoon Leader Maxwell Sexton
Squad Leader 1 Steven Goldwire
Alejandro Lezama
Renee Jorgensen

Michael Black
John Ballard
Squad Leader 2 Brandon Rogers
Charles Elftman
Matthew Bublitz
Ryan Kearns
Matthew Leuzinger
Steven Markowski
Squad Leader 3 Daniel Humphreys
Mason Kohlhapp
Benjamin Leuzinger
Steven Haw
Travis Simanson
Grenadier Montrell Hobbs
Grenadier Corie Richardson

57.     The day following Supervisor Clancy's arrest, Barrett, Morales, and Lucas jointly appeared to announce a third curfew by proclamation of Mayor Barrett.

## First Cause of Action: Unlawful Seizure
**Against: Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy**

58.     The plaintiff alleges and reincorporates by reference the allegation of the preceding paragraphs.

59.     This claim is brought pursuant to 42 U.S.C. § 1983 against Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy for the violation of Supervisor Clancy's rights under the Fourth Amendment to the United States Constitution not to be subjected to unreasonable seizure.

60.     Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy caused Supervisor Clancy to be arrested and/or detained without probable cause or reasonable suspicion in violation of Supervisor Clancy's rights under the Fourth and Fourteenth Amendments to the United States Constitution.

15

61. Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy acted knowingly, intentionally, and with malice.

62. Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy were deliberately indifferent to the constitutional rights of Supervisor Clancy.

63. As a direct and proximate result of the acts of Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy, as alleged, Supervisor Clancy suffered injuries, including the violation of his constitutional rights, loss of liberty, emotional distress, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Supervisor Clancy in an amount to be determined at a trial of this matter.

**Second Cause of Action: Excessive Force**
**Against: Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy**

64. Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

65. The uses of force employed by Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy during the course of arresting Supervisor Clancy without probable cause, including, but not limited to, tackling Supervisor Clancy, using restraints on Supervisor Clancy, and overly tightening the zip-tie restraints, were not objectively reasonable under the Fourth Amendment to the United States Constitution given the objective lack of probable cause to believe Supervisor Clancy had committed any offense.

66.     The conduct alleged constituted unreasonable and excessive force and violated Supervisor Clancy's right to be free from unreasonable seizures under the Fourth and Fourteenth Amendments to the United States Constitution.

67.     The use of force by Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy was unreasonable and excessive and was a cause of the injuries sustained by Supervisor Clancy, including the violation of his constitutional rights, loss of liberty, past and future pain, suffering, emotional distress, mental anguish, past medical expenses, disability, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Supervisor Clancy in an amount to be determined at a trial of this matter.

68.     Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy acted with malice or in reckless disregard of Supervisor Clancy's federally protected rights.

### Third Claim for Relief: Failure to Intervene
**Against: Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy**

69.     Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

70.     This claim is brought pursuant to 42 U.S.C. § 1983 against Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy for failure to intervene to prevent the violation of Supervisor Clancy's rights under the Fourth, and Fourteenth Amendments to the United States Constitution as more fully alleged above.

71.     In the manner described above, during the constitutional violations described, one or more of Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and

John Doe Sheriff's Deputy were present at the time of the incidents alleged herein, and other as-yet unknown individuals, stood by without intervening to prevent the misconduct, despite having the opportunity to do so.

72. The defendants, Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy acted knowingly, intentionally and with malice; each individual defendant was deliberately indifferent to Supervisor Clancy's constitutional rights.

73. That, as a direct and proximate result of the defendants' misconduct as described, Plaintiff suffered injuries as more fully alleged above.

## Fourth Claim for Relief: *Monell* Claim against City of Milwaukee and Mayor Tom Barrett
### (Policy, Practice, and/or Custom; Failure to Train and Supervise)

74. Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

75. This count is brought against City of Milwaukee, pursuant to 42 U.S.C. § 1983, insofar as the actions of Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers and John Doe Sheriff's Deputy, including the arrest and use of and use of force against Supervisor Clancy, as alleged, were taken pursuant to the Mayor Tom Barrett's invalid and/or unconstitutional curfew proclamation of May 30, 2020.

76. As alleged, the May 30, 2020, emergency proclamation was invalidly declared by Mayor Tom Barrett and enforced by the City of Milwaukee and violated due process.

77. The City of Milwaukee failed to adequately train law enforcement, including Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers, relative to the limits of the emergency prosecution, including the exemption for government officials.

78. The curfew was overly broad as drafted.

18

79.     In enacting and enforcing the curfew, Mayor Barrett and the City of Milwaukee were utterly indifferent to the constitutional rights of its citizens and government officials, including Supervisor Clancy.

80.     The invalid and unconstitutional enactment of the May 30, 2020 emergency proclamation, the unlawful enforcement of the proclamation, and the failure to adequately train and supervise the named law enforcement officers was a direct and proximate cause of Supervisor Clancy's injuries, including the violation of his constitutional rights, loss of liberty, past and future pain, suffering, emotional distress, mental anguish, past medical expenses, disability, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Supervisor Clancy in an amount to be determined at a trial of this matter.

### Fifth Claim for Relief: Violation of the Fifth, Ninth, and Fourteenth Amendments to the United States Constitution: Freedom of Movement
### Against: City of Milwaukee and Mayor Tom Barrett

81.     Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

82.     The curfew order was not narrowly tailored and violated the Constitution's protection for the freedom of movement.

83.     The curfew order was overly broad as not to clearly define exceptions for legitimate activities, including governmental oversight of law enforcement. As exemplified by the arrest of Supervisor Clancy, the curfew applied more broadly than necessary to address any purported emergency at the time of the curfew. The curfew order was applied to prevent an elected government official from observing the interactions of the law enforcement body, over which he had legislative oversight, and the citizens from the county he is elected to represent. Effectively, this curfew, as drafted, was used to prevent legislative oversight of law enforcement

19

and the legitimate interests of an elected official to conduct citizen outreach. The Constitution does not permit deprivation of liberty, including the freedom of movement, under these legitimate circumstances.

84. The curfew order was a direct and proximate cause of Supervisor Clancy's injuries, including the violation of his constitutional rights, loss of liberty, past and future pain, suffering, emotional distress, mental anguish, past medical expenses, disability, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Supervisor Clancy in an amount to be determined at a trial of this matter.

### Sixth Claim for Relief: Violation of the Fifth, and Fourteenth Amendments to the United States Constitution: Due Process Notice
### Against: City of Milwaukee and Mayor Tom Barrett

85. Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

86. The curfew order was unconstitutional because it provided insufficient notice.

87. The Fifth and Fourteenth Amendments prohibit deprivations of liberty without "due process," which includes notice sufficient to reasonably convey the required information.

88. The curfew order was ambiguous as to its critical terms and failed to provide sufficient notice because it did not clarify who qualifies as a member of government for purposes of exemption, what proof an elected official must carry to prove his exemption from the curfew, whether an elected official was exempt only in certain areas of the city but not others, whether an elected official must be acting in his official capacity at the time of the curfew, and when an elected official is considered to be acting in his official capacity.

89. The curfew order violated Supervisor Clancy's Due Process rights.

90. The curfew order was a direct and proximate cause of Supervisor Clancy's injuries, including the violation of his constitutional rights, loss of liberty, past and future pain, suffering, emotional distress, mental anguish, past medical expenses, disability, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Supervisor Clancy in an amount to be determined at a trial of this matter.

### Seventh Claim for Relief: Violation of Fifth and Fourteenth Amendments: Procedural Due Process
### Against: City of Milwaukee and Mayor Tom Barrett

91. Plaintiff realleges and incorporates herein by reference the allegations of the preceding paragraphs.

92. The curfew order was unconstitutional because it provided insufficient opportunity to be heard.

93. The Fourteenth amendment prohibits state actors from depriving an individual of liberty without due process of law. Included in this is the right to a hearing when the state deprives an individual of fundamental liberty interests.

94. The defendants, City of Milwaukee and Mayor Tom Barrett, violated this interest by issuing a curfew order by emergency proclamation, despite ample opportunity for the Common Council to meet and hold a hearing regarding the need for an emergency curfew and the breadth and application of any such curfew.

95. The failure to provide for a public hearing prior to issuing the emergency proclamation and curfew was a cause of the violation of Supervisor Clancy's liberty, as alleged herein.

96. Upon information and belief, all curfew charges issued pursuant to the subject emergency proclamation were dropped and will not be prosecuted against any citizens. No

remedial state law procedures exist to remedy the violation of Supervisor Clancy's constitutional rights arising from his arrest.

97. The curfew order was a direct and proximate cause of Supervisor Clancy's injuries, including the violation of his constitutional rights, loss of liberty, past and future pain, suffering, emotional distress, mental anguish, past medical expenses, disability, loss of enjoyment of life and dignity, and other compensable injuries and damages, all to the damage of Supervisor Clancy in an amount to be determined at a trial of this matter.

**WHEREFORE**, the plaintiff demands judgment against defendants as follows:

A. for an order declaring that the May 30, 2020 emergency proclamation was invalid and/or unconstitutional;

B. for an order declaring that the defendants violated the plaintiff's, Supervisor Ryan Clancy's, constitutional rights;

C. for an order declaring that the defendant, City of Milwaukee, is responsible under Wis. Stat. § 895.46 to indemnify each of the individually named and John Doe Police Officers and to satisfy any judgment entered against them;

D. for an order declaring that the defendant, Milwaukee County, is responsible under Wis. Stat. § 895.46 to indemnify John Doe Sheriff's Deputy and to satisfy any judgment entered against them;

E. for compensatory damages against all defendants, jointly and severally, in an amount to be determined at trial;

F. for punitive damages against defendants in an amount to be proved at trial;

G. for plaintiff's attorneys' fees, pursuant to 42 U.S.C. § 1988;

H. for costs;

22

I.      for such further and additional relief as this Court may deem equitable and just.

**PLEASE TAKE NOTICE THAT THE PLAINTIFF DEMANDS A JURY TRIAL**

**IN THE IN THE ABOVE-ENTITLED ACTION.**

Dated: December 1, 2021            **MARTIN LAW OFFICE, S.C.**
                                    Attorney for Plaintiff(s)

                                    *Electronically Signed by Drew J. DeVinney*


                                    _____

                                    Drew J. De Vinney
                                    State Bar No. 01088576

ADDRESS
7280 S. 13th St., Ste.102
Oak Creek, WI 53154
414-856-2310 (office)
414-856-2315 (fax)
drew@martin-law-office.com