_____

RYAN CLANCY,

                    Plaintiff,

v.                                                        Case No. 21-CV-881

CITY OF MILWAUKEE,
JOHN DOE MILWAUKEE POLICE OFFICERS, AND
MAYOR TOM BARRETT, CHRISTOPHER MOEWS, DAVID BETTIN,
And MATTHEW ROSEN
                    Defendants.

_____

## DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT

_____

Defendants by their attorneys, Tearman Spencer, City Attorney, by Anthony Jackson, Assistant City Attorney, hereby provides this brief in support of their Motion for Partial Summary Judgment. This Motion and Memorandum are supported by Defendants' Proposed Findings of Fact and the supporting material filed herewith.

### STATEMENT OF FACTS

Defendants respectfully refer the Court to their proposed findings of facts, and the evidentiary support cited therein, submitted in the context of the brief filed in support of their motion for summary judgment, as if fully restated herein.

### SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.

1

R. Civ. P. 56(c); *Celotex Corp v. Catreett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden to demonstrate that it is entitled to judgment as a matter of law, that no reasonable jury could reach a verdict in favor of the non-moving party. Celotex, 477 U.S. at 323; *Matsushita Electronics, Co. Ltd., v. Zenith Radio Corp*. 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." One this burden is met, the opposing party must go beyond the pleadings and designate the specific facts showing there is a genuine issue. *Anderson v. Liberty Lobb*, 477 U.S. 242 (1986). The mere existence of some alleged factual dispute will not defeat summary judgment. The requirement is there be no genuine issue of material fact. Id. at 247-48. Nor will speculation, hearsay or conclusory allegations suffice. *Gorbitz v. Corvilla*, 196 F.3d 879 (7th Cir. 1999)).

## ARGUMENT

### A. Mr. Clancy was lawfully arrested as Defendants Bettin and Moews had probable cause to believe Mr. Clancy violated the curfew order.

There is no doubt that Defendants Bettin and Moews had probable cause to place Clancy under arrest. The law-provides that police have probable cause to arrest if the facts and circumstances within the arresting officers' knowledge, and of which they had reasonably trustworthy information, were sufficient to warrant a prudent man in believing that the suspect had committed, or was committing, an offense. *Adams v. Williams*, 407 U.S. 143 (1972); see also *Mustafa v. City of Chicago, 442 F.3d 544, 547 (7th Cir. 2006) (citing Simmons v. Pryor, 26 F.3d 650, 654 (7th Cir. 1993))*. "The test, an objective one, is whether a reasonable officer would have believed the person had committed a crime." *Kelley*, 149 F.3d at 646. "If so, the arrest is lawful even if the belief would have been mistaken." *Id*. (quoting *Mahoney v. Kesery*, 976 F.3d 1054, 1057-58 (7th Cir. 1992). The United States Supreme Court has held that it is constitutionally sound for an

officer to summarily arrest an individual for something as minor as a municipal ordinance violation, like a traffic offense. *Atwater v. City of Lago Vista*, 531 U.S. 990, 121 S.Ct. 1536, 149 L.Ed. 2d 549 (2001). Furthermore, the Supreme Court has clearly established that "reasonableness" remains the touchstone of any Fourth Amendment inquiry:

> To say that the Fourth Amendment applies here is the beginning point, not the end of the analysis. "[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against intrusions which are not justified in the circumstances, or which are made in an improper manner." …. "As the text of the Fourth Amendment indicates, the ultimate measure of the constitutionality of a governmental search is `reasonableness.'". . . In giving content to the inquiry whether an intrusion is reasonable, the Court has preferred "some quantum of individualized suspicion ... [as] a prerequisite to a constitutional search or seizure. But the Fourth Amendment imposes no irreducible requirement of such suspicion." ….

*Maryland v. King*, 569 U.S. 435, 446-447 (2013). The reasonableness standard usually requires, "at a minimum, that the facts upon which an intrusion is based be capable of measurement against `an objective standard,' whether this be probable cause or a less stringent test." *Delaware v. Prouse,* 440 U.S. 648, 654 (1979).

Further, the Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternative in search and seizure cases; the only test is whether what the police did was reasonable. *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994). Due to qualified immunity's protection, an officer needs only "arguable" probable cause, and that exists "when a reasonable officer 'in the same circumstances and . . . possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law.'" "Usually in a § 1983 false-arrest case the jury determines whether the arrest was supported by probable cause; but if the underlying facts are undisputed, the court can make that decision on summary judgment." *Abbott v. Sangamon Cty.*, 705 F.3d 706, 714 (7 th Cir. 2013) (citing *Chelios v. Heavener*, 520 F.3d 678, 686 (7th Cir. 2008)).

3

In this case, the undisputed facts clearly demonstrate that Clancy violated the curfew order, such that his arrest was not unlawful. Defendant Bettin's decision to place Clancy under arrest on March 31, 2020 was objectively reasonable based on the totality of the circumstances. As evident from the supporting materials, Officer Bettin encountered Clancy in the City of Milwaukee near the intersection of Edgewood and Oakland in violation of the curfew order. Defendants' Proposed Findings of Fact ("DPFF") ¶¶ 13, 19-20. The curfew order applied to all persons within the City of Milwaukee from 9:00 p.m. on May 31th, 2020 until 7:00 a.m. on June 1, 2020. DPFF ¶ 9. At the time of his arrest, Clancy was located within the City of Milwaukee past 9:00 p.m. in violation of the order and not engaged in any exempted activity. DPFF ¶ 2. The only exempted individuals were the "government, social services, and credentialed press acting in their official capacity." DPFF ¶ 10. Although Clancy claims he was acting as an elected official engaging in constituent outreach during the protests (DPFF ¶ 28), Clancy gave inconsistent statements to Officer Bettin and Captain Moews such that it was reasonable for the officers to doubt his claims and initiate an arrest for the curfew violation. The inconsistencies included: that 1) Clancy was arrested in Shorewood, a municipality not subject to the curfew order, 2) that Clancy was acting as an ACLU observer and government official. In fact, these inconsistent and contradictory statements, combined with Officer Bettin's belief that Clancy intended to interfere with the arrest of another citizen (DPFF ¶ 18,) reasonably gave rise that Clancy was obstructing an officer's lawful authority, a criminal offense for which Clancy was not cited or charged. *See Calusinski v. Kruger*, 24 F.3d 931, 935 (7th Cir. 1994) (holding that at the time of the arrest police officers need probable cause that a crime has been committed, not that the defendant committed all of the crimes for which he or she is later charged).

Here, although Clancy never received any citation or charge for obstruction, officers did have probable cause to arrest him for obstruction. Wisconsin Statutes, Section 946.41 - Resisting or Obstructing Officer, provides that "whoever knowingly resists or obstructs an officer while such officer is doing any act in an official capacity and with lawful authority is guilty of a Class A misdemeanor," and Chapter 105-38 of the Milwaukee Code of Ordinances prohibits that same behavior. A violation requires proof that 1) the defendant resisted or obstructed an officer; 2) the officer was acting in an official capacity; 3) the officer was acting with lawful authority; and 4) the defendant knew the officer was acting in official capacity and with lawful authority and that the defendant's conduct would resist the officer. *State State v. Young* 717, N.W. 2d 729, 749 (Wis. 2006), Wis. J.I. 1766 Obstruction.

In addition to having probable cause to arrest for the curfew violation, Officer Bettin and Captain Moews had at least arguable probable cause to believe that Clancy was obstructing lawful authority based on Clancy's inconsistent and misleading statements, and based on Officer Bettin's observation that Clancy demonstrated an intent to interfere with the arrest of another protestor.

**B. The force the officers used was objectively reasonable**

Clancy's excessive force claim must fail based on the totality of the circumstances. The Court analyzes a claim that a law enforcement officer used excessive force when effectuating an arrest under the Fourth Amendment's objective reasonableness standard. *Avina v. Bohlen*, 882 F.3d 674, 678 (7th Cir. 2018) (citing *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861 (7th Cir. 2010). "Whether a police officer used excessive force is analyzed from the perspective of a reasonable officer under the circumstances, rather than examining the officer's actions in hindsight." *Id.* (quoting *Dawson v. Brown*, 803 F.3d 829, 833 (7th Cir. 2015)). Furthermore,

5

"[t]he fact-specific nature of whether an officer used excessive force depends on the totality of the circumstances surrounding the encounter." *Scott v. Edinberg*, 346 F.3d 752, 756 (7th Cir. 2003) (citing *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 592 (7th Cir. 1997).)  In evaluating the reasonableness of a use of force, courts must consider officer safety concerns and whether the suspect cooperates or resists. *Graham v. Connor*, 490 U.S. 396 (1989). The Fourth Amendment does not require officers to use the least intrusive or even less intrusive alternative in search and seizure cases; the only test is whether what the police did was reasonable.  *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994). The United States Supreme Court has held that

> [i]n Graham we held that claims of excessive force in the context of arrests or investigatory stops should be analyzed under the Fourth Amendment's "objective reasonable standard," not under substantive due process principles.  490 U.S., at 388, 394, 109 S.Ct. 1865.  Because "police officers are often forced to make split-second judgments -- in circumstances that are tense, uncertain, and rapidly evolving -- about the amount of force that is necessary in a particular situation," *Id.*, at 397, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective.  *Id.,* at 396.  We set out a test that cautioned against the "20/20 vision of hindsight" in favor of deference to the judgment of reasonable officers on the scene.  *Id.*, at 393, 396.  Graham sets forth a list of factors relevant to the merits of the constitutional excessive force claim, "requir[ing] careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." Id., at 396.  If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed. *Saucier v. Katz*, 531 U.S. 991, 121 S.Ct. 2151, 2158, 150 L.Ed.2d 272 (2001).

Courts have held that a small amount of force, like grabbing a suspect, handcuffing him, and placing him in a squad car, is permissible under the Fourth Amendment in effecting an arrest. *Cortez v. McCauley*, 478 F. 3d 1108, 1128 (10th Cir. 2007).  The Seventh Circuit has held that handcuffing pursuant to an arrest is not unreasonable as long as it is not done in a manner that would clearly injure or harm a typical arrestee. *Stainback v. Dixon*, 569 F. 3d 767 (7th Cir. 2009), and the Supreme Court has clarified that a 2-3 -hour detention while handcuffed was not

unreasonable. *Muehler v. Mena*, 544 U.S. 93 (2005). If there are sufficient undisputed material facts to establish that the officer acted reasonably under the circumstances, the court must resolve the issue as a matter of law, rather than allow a jury to "second guess" the officer's action. *Id*. (citing *Bell v. Irwin,* 321 F.3d 637, 640 (7th Cir. 2003)).

In the case at hand, the force that Officer Bettin used to arrest and place handcuffs on Clancy was objectively reasonable. The force Officer Bettin used was no more force than was necessary to place Clancy under arrest and to contain him.

Clancy was not kicked, punched, or struck in any manner, and no weapon was used against him. Officer Bettin merely grabbed Clancy's arm, ordered him on the ground, and with the assistance of another officer, handcuffs were placed onto Clancy. DPFF ¶ 19. A reasonable factfinder could not conclude that Officer Bettin or any other named defendant used excessive force when they arrested the plaintiff. This claim should be dismissed.

## C. Qualified Immunity

Even if the Court were to find that Clancy was unlawfully arrested and that he was the recipient of excessive force, the officers are still protected by qualified immunity. "For civil damages claims under 42 U.S.C. § 1983 for violations of constitutional rights, the doctrine of qualified immunity, 'shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Muhammad,* 900 F.3d at 903 (quoting *Mullenix v. Luna*, 136 S.Ct. 305, 308, (2015) (per curiam)). "Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. "To overcome a defendant's invocation of qualified immunity, a plaintiff must show: 1) that the official violated a statutory or constitutional right, and 2) that the right was clearly established at the time of the challenged conduct." *Muhammad*, 900 F.3d at 903 (quoting *Green v. Newport* 868 F.3d 629, 633 (7th Cir. 2017)).

In analyzing the defense of qualified immunity in a false arrest claim, the Court must determine if the officer actually had probable cause or, if there was no probable cause, whether a reasonable officer could have mistakenly believed that probable cause existed." *Humphrey v. Staszak*, 148 F.3d 719 (7th Cir. 1998) (citing *Edwards v. Cabrena*, 58 F.3d 290, 293 (7th Cir. 1995)). "Courts have referred to the second inquiry as asking whether the officer had 'arguable' probable cause." *Humphrey*, 148 F.3d at 725. Arguable probable cause exists when a "reasonable police officer in the same circumstances and with the same knowledge and possessing the same knowledge as the officer in question could have reasonably believed that probable cause existed in light of well-established law." *Humphrey*, 148 F.3d at 725 quoting *Gold v. City of Miami*, 121 F.3d 1442, 1445 (11th Cir. 1997) (per curiam)). "Moreover, 'if probable cause is lacking with respect to an arrest, despite an officer's subjective belief that he had probable cause, he is entitled to immunity as long as his subjective belief was objectively reasonable." *Wollin*, 192 F.3d at 623 (quoting *Edwards,* 58 F.3d at 292).

Based on the facts and circumstances, Officer Bettin's decision to place Clancy under arrest and any affirmation by Defendant Moews to continue the arrest was objectively reasonable and therefore the officers are protected by qualified immunity. "If an officer has established cause on every element of a crime, he need not continue investigating in order to test the suspect's claim of innocence…The inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation." *Kelley*, 149 F.3d at 646-47. In this case, Defendant Moews *did* conduct an investigation into Clancy's arrest, and he made a reasonable credible determination that Clancy was not acting as a government official. Given the inconsistent information that was provided, as well as a chaotic scene, and an environment

8

that was increasingly becoming dangerous, it was objectively reasonable for Defendants Bettin and Moews to not find Clancy credible and place him under arrest for violating the curfew order.

Additionally, given the specific facts of this case, Clancy cannot meet his burden to establish that the Defendants' conduct violated clearly established Fourth Amendment principles as it relates to his excessive force claim. To defeat Defendants' affirmative defense of qualified immunity, Clancy bears the burden to produce a case in which his right to be free apparently from almost all physical force during his arrest under the circumstances then present was clearly established such that the Defendants were put on notice that their action in effectuating Clancy's arrest on May 31, 20220 violated his Fourth Amendment rights. The Constitution permits police to place handcuffs on an arrestee and apply some level of force. Defendants are entitled to qualified immunity on Clancy's excessive force claim.

**D. Claims against Officer Rosen should be dismissed**

Defendant Rosen did not arrest Clancy. Officer Rosen was not involved in the decision to arrest Clancy, nor was he ever consulted, like Defendant Moews to determine if Clancy was subjected to the curfew order. DPFF ¶ 24. "Liability under § 1983 requires proof that the defendants were acting under color of state law and that the defendants' conduct violated the plaintiff's rights, privileges, or immunities secured by the Constitution or laws of the United States." *Lanigan v. Vill. of E. Hazel Crest, Ill.*, 110 F.3d 467, 471 (7th Cir. 1997). Here, Clancy cannot establish that Officer Rosen was "personally responsible for the deprivation of a constitutional right." *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).

**E. Clancy's Failure to Intervene Claim must also fail**

Omissions can violate civil rights, and "under certain circumstances a state actor's failure to intervene renders him or her culpable under § 1983." *Yang v. Hardin*, 37 F.3d 282, 285 (7 th Cir. 1994); *see also Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997) applying the *Yang* analysis to a search and seizure claim.) *Yang* summarized the responsibility to intervene:

> An officer who is present and fails to intervene to prevent other law enforcement officers from infringing the constitutional rights of citizens is liable under § 1983 if that officer had reason to know: 1) that excessive force was being used, 2) that a citizen has been unjustifiably arrested, or 3) that any constitutional violation has been committed by a law enforcement official; and that the officer had a realistic opportunity to intervene to prevent the harm from occurring.  37 F.3d at 285.

As argued above, Plaintiff cannot prove that he was falsely arrested or that he was subjected to excessive force and as a result Defendants Rosen, Moews, and unidentified John Doe Police Officers cannot be held liable for failing to intervene to prevent a constitutional violation that Plaintiff has not proven.

### F.   Clancy fails to state causes of actions against the John Doe police officers

In his Second Amended Complaint, Plaintiff has named party defendants John Doe police officers.  Am. Compl, Docket No. 29.  However, Clancy has failed to identify the John Doe police officers and has failed to amend his complaint in the time period allowed by the Federal Rules of Civil Procedure.  Discovery is now closed and Clancy is time barred from amending his complaint to identify John Doe defendants.  Pursuant to Fed. R. Civ. P. 10(a) the title of the complaint, must name all the parties.  Clancy has failed to identify the specific John Doe police officers whom he claims violated his constitutional rights.  All claims against the John Doe police officers should be dismissed.

### G. The Emergency Proclamation was narrowly tailored to serve a significant government interest and did not violate Clancy's right for "freedom of movement."

The City of Milwaukee and Mayor Tom Barrett did nothing wrong in enacting the emergency proclamation. The Plaintiff alleges that that the curfew order was not narrowly tailored and violated the U.S. Constitution's freedom of movement. The Fourteenth Amendment to the United States Constitution does not articulate a specific right to the "freedom of movement" as alleged in Claim 5 of Clancy's Complaint. Am. Compl. at 19. Instead, this right is derived from the Fourteenth Amendment's Privileges and Immunities Clause, which states that "no state shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States, or shall any State deprive any person of life liberty or property without due process of law; nor deny any person within its jurisdiction the equal protection of the law." U.S. Const. Amend. 14. Freedom of travel, like freedom of speech, may be subject to reasonable limitations as to time and place. *U.S. v. Chalk*, 441 F.2d 1277, 1283 (4th Cir. 1971).

In this case, the curfew order was in response to civil unrest during the George Floyd protests that was endangering the safety and welfare of citizens in Milwaukee. Mayor Barrett's curfew order described the looting, the destruction of private property, and the violence that was taking place in Milwaukee. DPFOF ¶ 9. The curfew order was limited in time, as it only applied at night, and did not prevent Clancy from any activity of movement during the daytime. If he desired, Clancy could have observed demonstrations in any capacity during day light hours. As such, he had alternative channels to engage in the "freedom of movement."

Furthermore, the government may impose such restrictions in public forums so long as they "are justified without reference to the content of the regulated speech," and "are narrowly tailored to serve a significant governmental interest, and "leave open ample alternative channels for communication of the information." *Clark v. Cmt. For Creating Nonviolence*, 468 U.s. 288, 293, 104 S.Ct. 3065, 82 L.Ed

The curfew order was narrowly tailored to a significant government interest. The demonstrations as stated in the curfew order had escalated at night from "peaceful protests," to behavior that "disrupted the safety and good order of the City of Milwaukee. DPFF ¶ 9. After 10 p.m. on May 29, 2020, there were numerous acts of criminal activity including, "theft of private property, defacement and vandalism of private property, vandalism of public property, and the shooting of an on duty Milwaukee Police Department officer, as well as other acts that endangered the health, safety, and welfare of the citizens of Milwaukee. DPFF ¶ 9. As a matter of law, the curfew order was narrowly tailored to serve a significant government interest in restoring civil order and did not infringe on Clancy's right for "freedom of movement." Claim five should be dismissed.

### H. Plaintiff's *Monell* Claim against the City of Milwaukee and Mayor Tom Barrett must be dismissed

Plaintiff asserts claims against the City of Milwaukee and Mayor Tom Barrett for having policies, practices, and/or customs of violating his constitutional rights and for having policies and practices that fail to train and supervise their officers. Am. Compl. at 18-19, Docket 29. To prove a § 1983 claim against the City of Milwaukee and Mayor Tom Barrett, Clancy must establish that he suffered a constitutional injury caused by an official municipal policy or custom. *Monell v. Dept. of Social Services*, 436 U.S. 658, 694, 98 S.Ct. 2018, 2037, 56 L.Ed.2d 611 (1978). Clancy is not able to meet this burden.

Furthermore, even if Clancy could establish that he suffered an actionable deprivation, he fails to establish a *Monell* claim against the City of Milwaukee and Mayor Tom Barrett. "A municipality cannot be liable under *Monell* when there is no underling constitutional violation by a municipal employee." *See Sallenger v. City of Springfiled* 630 F.3d 499, 504 (7th Cir. 2010).

12

The Seventh Circuit has noted that a plaintiff has three means of establishing municipal liability under *Monell*: 1) the plaintiff must establish the existence of an "express municipal policy that, when enforced, causes a constitutional violation;" 2) the plaintiff must prove "a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law;" or 3) the plaintiff must show that "the constitutional injury was caused by a person with final policymaking authority*." Roach v. City of Evansville*, 111 F.3d 544, 548 (7th Cir. 1997) (quoting *McTigue v. City of Chicago,* 60 F.3d 381, 382 (7th Cir. 1995)).

To prevail on a "widespread practices" claim, Plaintiff must show that the City engaged in a practice "so permanent and well settled as to constitute a custom or usage with the force of law." *Wragg v. Vill of Thornton*, 604 F.3d 464, 467 (7th Cir. 2010). A widespread practice "requires more evidence than a single incident to establish liability." *Calhoun*, 408 F.3d at 380. Plaintiff must provide "evidence that there is a true municipal policy at issue, not a random event." The Seventh Circuit has declined to adopt bright-line rules finding a "widespread practice," recognizing that "there is no clear consensus as to how frequently such conduct must occur to impose Monell liability, except that it must be more than one instance…or even three." *Thomas v. Cook County Sheriff's Dept*. 604 604 F.3d 293, at 303.

In this case, there is no relevant evidence to establish the City had a widespread practice of the use of unreasonable and excessive force on the Plaintiff and other protesters. Discovery has not revealed that the City has had a widespread practice of the use of excessive force or for conducting unlawful arrests on citizens.

Likewise, Clancy cannot establish any training, discipline, or supervision failure of the City. To establish a claim for municipal civil rights violation based on a failure to train, a plaintiff must prove the municipality adopted a policy that amounts to "deliberate indifference to the rights of the person with whom the untrained employees come into contact." *Connick v. Thompson*, 563 U.S. 51, 61 (2011). To establish a failure to train claim, "a pattern of similar constitutional violations ordinarily necessary to demonstrate deliberate indifference." *Id.* at 62. Even if "a particular officer may be unsatisfactorily trained" that "will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than faulty training program." *City of Canton v. Harris*, 489 U.S. 378, 390-91 (1989)

Plaintiff generally alleges that the "City of Milwaukee failed to adequately train law enforcement, including Christopher Moews, David Bettin, Matthew Rosen, John Doe Police Officers, relative to the limits of the emergency prosecution, including the exemption for government officials." Am. Compl. ¶ 77. In this case, there is no evidence that the City had knowledge of any unconstitutional conduct attributable to inadequate training or that the City knew it was highly predictable that such constitutional deprivations would occur without more or different training, because there was a pattern of similar constitutional violations.

Additionally, to the extent Clancy's *Monell* claim is based on the City of Milwaukee's issuance of the emergency proclamation pursuant to Wisconsin Statute sections 323.14(4)(b) and Milwaukee Code of Ordiance section 6-07-3, his claim is off base. The validity of the emergency proclamation would not support a constitutional violation, and the Supreme Court has ruled that federal courts lack the authority to direct state officials to comply with state law. *Pennhurst State School and Hospital v. Halderman*, 465 U.S. 89, 106 (1984); *Snowdon v. Hughes*, 321 U.S. 1, 11 (1944) ("Mere violation of a state statute does not infringe the federal

14

Constitution." A failure to follow a state regulation does not constitute a constitutional violation. *See Thompson v. City of Chicago*, 472 F.3d 444, 454 (7th Cir. 2006) (violation of a department procedure or state law is immaterial to whether actions violated federal constitutional right); Scott v. Edinburg, 346 F. 3d 752, 760 (7th Cir. 2003) (Section 1983 provides a remedy for constitutional violations, not violations of state statutes or regulations. Thus, if Clancy is claiming that the City of Milwaukee and/or Mayor Tom Barrett failed to follow state law which led to his rights being violated, this is the wrong forum for his claim. As such, this Court should dismiss Clancy's *Monell* claim against the City of Milwaukee and Tom Barrett.

## CONCLUSION

For the reasons set forth above, Defendants respectfully requests that the Court grant their Motion for Partial Summary Judgment and that the Court dismiss claims against the named Defendants as argued and cited in the above brief.

Signed at the City of Milwaukee, this 3rd day of October, 2022

TEARMAN SPENCER
City Attorney


/s/Anthony Jackson
Assistant City Attorney
State Bar No. 1090574
Milwaukee City Attorney's Office
800 City Hall
Milwaukee, WI 53202
(414) 286-8014
lajack@milwaukee.gov

15